UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GILBERT VAZQUEZ,

                Petitioner,

                -against-

ROBERT M. MACCONE, *Chairman and Director of Probation and Correctional Alternatives of the New York State Division of Criminal Justice*, JENNIFER ELFLEIN, *as Probation Officer*, *and* THE ATTORNEY GENERAL OF THE STATE OF NEW YORK,

                Respondents.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
12-CV-4564 (JMA)

FILED
CLERK

5/6/2016 10:53 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Joseph W. Murray
125-10 Queens Boulevard, Suite 5
Kew Gardens, NY 11415
*Attorney for Petitioner*

Douglass Noll and Barbara Kornblau
Assistant District Attorneys
Kathleen M. Rice, District Attorney of Nassau County
262 Old Country Road
Mineola, NY 11501
*Attorneys for Respondents*

**AZRACK, United States District Judge:**

       Gilbert Vazquez ("petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2009 conviction in state court. On April 20, 2009, following a jury trial, petitioner was convicted of Driving While Ability Impaired and Assault in the Second Degree. Petitioner was acquitted of Obstructing Governmental Administration in the Second Degree and Driving While Intoxicated. Petitioner was sentenced to sixty days of imprisonment

and five years of probation for the Assault in the Second Degree conviction, and fifteen days of imprisonment for the Driving While Ability Impaired conviction.

Petitioner argues that his conviction for Assault in the Second Degree of a police officer must be vacated because the evidence was legally insufficient to support the jury's finding on the lawful duty element of the charge. Specifically, petitioner contends that the police officer he assaulted was injured as the officer was violating petitioner's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Petitioner also requests discovery and an evidentiary hearing. For the reasons set forth herein, the petition is DENIED in its entirety.

## I. BACKGROUND

### A. Facts

The following facts are taken from the petition, as well as from the state court trial and appellate records. Petitioner was arrested for Driving While Intoxicated ("DWI") after he was in a car accident on the Northern State Parkway in Nassau County. At the time of his arrest, petitioner was a New York City Police Officer and Warrant Officer in the United States Army National Guard. Petitioner has suffered, or will suffer, various collateral consequences from his assault conviction, including termination from the New York City Police Department, loss of his police pension, discharge from the military, permanent revocation of his security clearance, and loss of his military pension.[1] (Pet. for Writ of Habeas Corpus ("Pet.") ¶¶ 9–10.)

---

[1] The Court assumes that petitioner has satisfied the "in custody" requirement for bringing his habeas petition. See Maleng v. Cook, 490 U.S. 488, 491 (1989) ("Our interpretation of the "in custody" language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus."). Where certain burdens flow from a conviction and survive the sentence imposed, these collateral consequences ensure that the petition is not moot, even if the petitioner is not physically in custody. Carafas v. LaVallee, 391 U.S. 234, 237 (1968) (finding sufficient collateral consequences to avoid mootness when a conviction meant that the petitioner could not engage in certain businesses, could not serve as an official of a labor union for a specified period of time, could not vote, and could not serve as a juror).

**1. Petitioner's Arrest**

The car accident preceding petitioner's arrest occurred on February 3, 2008, at around 11:00 p.m. (Resp't Aff. in Opp'n to Pet. ¶ 5, ECF No. 16.) It was the night of the Super Bowl, and the roadway was busier than it usually was at that time of the evening. (Tr. 446.)[2] Petitioner was driving at speeds estimated to be in excess of 80 miles per hour and cutting other drivers off when he rear-ended another vehicle. (Tr. 33, 40–41, 453–54.) After the accident, petitioner, visibly upset, exited his car. (Tr. 53.) New York State Troopers Kraus, Gray, and Bayer responded to the scene. (Tr. 104.)

Each trooper testified that petitioner continuously swayed and leaned on his car for support; smelled of alcoholic beverages; and had bloodshot, watery eyes.[3] (Tr. 106, 196, 234.) Trooper Gray testified that although he heard petitioner speak in English, petitioner responded "no hablo" to inquiries for his insurance card and registration. (Tr. 107.)

After the troopers obtained petitioner's documents, Trooper Bayer, who testified that petitioner's New York City Police Officer identification was visible, asked him whether he had his service revolver on him. (Tr. 199–200.) Petitioner became agitated and responded: "No, I don't have my weapon on me. You're treating me like a fucking perp. I'm not a fucking perp." (Tr. 225.) He continued yelling and began pulling off his boots, rolling up his pant legs, and taking off his jacket and shirt. (Tr. 225–26.)

Trooper Kraus requested that petitioner perform a standardized field sobriety test. (Tr. 236.) He testified that petitioner exhibited all six clues of intoxication that he was trained to detect.

---

[2] "Tr." refers to portions of the trial transcript, <u>People v. Vazquez</u> Trial Tr., Apr. 7–17, 20, 2009, ECF No. 13-3.

[3] Trooper Reppenhagen saw petitioner for the first time at the New York State Police Barracks when petitioner was brought in for arrest processing at 12:30 a.m. (Tr. 478.) Trooper Reppenhagen also testified that petitioner appeared "disheveled," with red, watery eyes and that petitioner smelled of alcohol or beer. (Tr. 478–79.)

(Tr. 238.) Petitioner was then placed under arrest and transported to the New York State Police Barracks (the "barracks") in Farmingdale to process a charge for DWI. (Tr. 238–39.)

### 2. Petitioner's Assault on a Police Officer

While petitioner's arrest for DWI was being processed, he was involved in an altercation with Trooper Kraus that occurred at the barracks. Troopers Kraus, Trooper Reppenhagen, Sergeant Gesuele, and Trooper Gray were present. Each of these individuals testified at petitioner's trial.

At approximately 12:25 a.m., petitioner arrived at the barracks for arrest processing and was placed in the squad room, where his left hand was handcuffed to a bench. (Tr. 239.) There are no holding cells at the barracks, and after an arrest is processed, individuals are taken to the Nassau County jail for holding. (Tr. 381.)

While waiting for processing in the squad room, petitioner, still handcuffed to the bench, alternated between kneeling and praying, crying, laughing, and cursing at the officers. (Tr. 251–52.) At times, petitioner was also sitting and lying on the floor. (Tr. 179, 400.) Trooper Kraus testified that this behavior continued for two and a half to three hours. (Tr. 252.)

The state police have a rule requiring that a person in holding sit on the bench and not on the floor. (Tr. 113–14, 293, 399–400.) Trooper Kraus testified that he would be held responsible if a supervisor walked in and petitioner had been sitting or kneeling on the floor. (Tr. 293, 299−300.) Trooper Kraus, Trooper Gray, and Sergeant Gesuele directed petitioner to sit on the bench multiple times. (Tr. 112–13, 116.)

Prior to the assault, Trooper Kraus began taping audio with a recording device, at the suggestion of another trooper. (Tr. 253.) This recording was played for the jury at petitioner's trial. (Tr. 266.)

At around 2:30 a.m., petitioner stood up from the bench, demanded to be taken to the hospital, and began striking the wall with his fist and head. (Tr. 252–53, 409–10, 385, 480–81.) Trooper Kraus directed him to stop, to which petitioner responded: "[T]hen fucking send me to the hospital." (Tr. 301.) Petitioner refused to comply with the officers' orders to stop and sit down. (Tr. 116, 253.) Trooper Kraus, Trooper Gray, and Sergeant Gesuele approached petitioner to restrain his right hand to the bench, at which point a struggle ensued. (Tr. 253–54.) Trooper Reppenhagen witnessed the altercation but stood back. (Tr. 481–82.) Petitioner pushed Trooper Gray away and began kicking and swinging at the officers. (Tr. 253–54, 385.) As petitioner recoiled, he struck Trooper Kraus in the chest, groin, and hand. (Tr. 253–54, 385–86.) Later, Trooper Kraus went to the hospital for treatment for an injury to his index finger stemming from the assault. (Tr. 257.) Medical examination showed that the index finger on his left hand was sprained. (Tr. 68.)

After he was restrained, petitioner was seated on the floor with his legs extended outward and shackled together. (Tr. 272, 304.) Each hand was cuffed to the end of the bench above him, in what petitioner refers to as the "crucifix position." (Pet. ¶ 34.) Petitioner contends that this restraint made it impossible for him to kneel and pray or bless himself. (Pet. ¶ 12.) Petitioner otherwise continued laughing, crying, and cursing. (Tr. 256.) He remained restrained in this position for about forty minutes. (Tr. 413.)

Sergeant Gesuele testified that before petitioner was transferred from the barracks to the jail, he took petitioner to Nassau Medical University Center because petitioner had complained of knee pain and had made statements that he wanted to harm himself. (Tr. 126, 390–91.) Petitioner was removed from the barracks at around 7:00 a.m. (Tr. 393.)

**B. Procedural History**

    **1. State Court Proceedings**

Petitioner was charged with Assault in the Second Degree under New York Penal Law § 120.05(3), Driving While Intoxicated under New York Vehicle and Traffic Law § 1192(3), and Obstructing Governmental Administration in the Second Degree under New York Penal Law § 190.05. After a trial in Supreme Court, Nassau County, on April 20, 2009, the jury convicted petitioner of Assault in the Second Degree and the lesser included offense Driving While Ability Impaired under New York Vehicle and Traffic Law § 1192(1). Petitioner was acquitted on all other charges. Justice Philip Grella sentenced petitioner to sixty days of imprisonment and five years of probation for the assault conviction and fifteen days of imprisonment for the Driving While Ability Impaired conviction.

Petitioner appealed from his judgment of conviction to the Appellate Division, Second Department, on seven different grounds. Petitioner claimed that, inter alia, the assault conviction was legally insufficient. People v. Vazquez, 920 N.Y.S.2d 212, 214 (2d Dept. 2011). In its decision affirming the conviction, the Appellate Division found that "[v]iewing the evidence in the light most favorable to the prosecution, [the evidence] was legally sufficient to establish the defendant's guilt of assault in the second degree beyond a reasonable doubt." Id.

In a letter dated May 23, 2011, petitioner sought leave to appeal the Appellate Division's Order to the New York State Court of Appeals on three separate issues. Relevant here, petitioner argued that the evidence was legally insufficient to permit a jury to convict him for Assault in the Second Degree because the People had failed to establish the lawful duty element of the charge. (Leave Appl. at 3.) On June 9, 2011, the Court of Appeals denied petitioner's application for leave

to appeal. People v. Vazquez, 17 N.Y.3d 802 (N.Y. 2011). Petitioner did not seek review before the United States Supreme Court.

**2. The Instant Petition**

Petitioner, by his counsel, filed a petition for writ of habeas corpus on September 12, 2012, seeking to vacate his conviction for Assault in the Second Degree of a police officer.[4] Although, petitioner does not clearly present how his claims are cognizable on habeas review, the Court construes the petition to argue that the assault conviction was legally insufficient.[5] Under New York law, "[a] person is guilty of assault in the second degree when . . . [w]ith intent to prevent . . . a police officer . . . <u>from performing a lawful duty</u> . . . he or she causes physical injury to such . . . police officer . . . ." N.Y. Penal Law § 120.05(3) (emphasis added). Petitioner argues that there was insufficient evidence to support the jury's finding on the lawful duty element because the officers were violating three of petitioner's constitutional rights when petitioner resisted their additional restraints and injured Trooper Kraus. First, petitioner argues that the officers used "unreasonable and excessive" force, in violation of the Fourth and Fourteenth Amendments to the United States Constitution (the "excessive force claims"). (Pet. ¶ 12.) Petitioner also argues that the officers violated his right to exercise his religion under the First Amendment to the United States Constitution (the "First Amendment claim"). (Id.) Finally, petitioner contends that because the officers arbitrarily and capriciously enforced rules pertaining to detainees, the officers denied him Equal Protection of the law under the Fourteenth Amendment

---

[4] Although the petition was not timely filed, counsel simultaneously filed a motion for extension of time because of difficulties with electronic filing. (Mot. for Extension of Time to File Writ of Habeas Corpus, ECF No. 2.) On September 20, 2012, Judge Feuerstein granted the petitioner's request for an extension of time to file the petition.

[5] A legal sufficiency claim is cognizable on habeas review because it is based on federal due process principles. See Jackson v. Virginia, 443 U.S. 307, 318–19 (1979).

7

to the United States Constitution (the "Equal Protection claim"). (Id. ¶ 14.) Petitioner requests discovery and an evidentiary hearing.

## II. DISCUSSION

### A. Overview of AEDPA

A district court is empowered to "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain habeas relief, a petitioner in custody pursuant to a state court judgment typically must present a claim that meets three requirement: (1) the claim must be exhausted; (2) the claim cannot be procedurally barred; and (3) the claim must satisfy the deferential standard of review set forth by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996).

### B. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement aims to ensure that a state court has the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must fairly present his federal claim to the highest state court from which a decision can be rendered. Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" Jackson v. Conway,

763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)). The petitioner must have informed the state court of "both the factual and legal premises of the claim he asserts in federal court." Id. at 191. Even if a petitioner does not explicitly cite the Constitution, he may still "fairly present" constitutional claims to the state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis,
> (b) reliance on state cases employing constitutional analysis in like fact situations,
> (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194. However, "a general appeal" to broad constitutional guarantees fails to present the substance of the claim to the state court. See, e.g., Gray v. Netherland, 518 U.S. 152, 163 (1996) (holding that a general appeal to a "broad federal due process right" was insufficient to meet the exhaustion requirement without a "more particular analysis" of the specific claim based on the relevant constitutional law).

Although petitioner raised several points in his state court appeals, he presses only one of those arguments here: the assault conviction was legally insufficient because the People failed to establish the lawful duty element of the charge. (Leave Appl. at 3, ECF No. 13-8; Def.-Appellant's Br. to App. Div. at 21 ("Pet.'s App. Div. Br."), ECF No. 13-5.) Although petitioner has exhausted his First Amendment claim, his other constitutional claims are unexhausted because they were not fairly presented to the New York State Court of Appeals.

**1. Petitioner's First Amendment Claim Is Exhausted**

Petitioner's First Amendment claim is exhausted. Petitioner explicitly referred to the First Amendment in both his brief to the Appellate Division and his leave application to the Court of Appeals. (Pet.'s App. Div. Br. at 26; Leave Appl. at 3.) By citing a specific provision of the Constitution in his brief and leave application petitioner has fairly presented his constitutional

9

claim to the state courts. Davis v. Strack, 270 F.3d 111, 122 (2d Cir. 2001). Because the Appellate Division did not deny petitioner's appeal on independent and adequate state law grounds, the Court will proceed to review the merits of the First Amendment claim, discussed infra.

**2. Petitioner's Excessive Force Claims and Equal Protection Claim Are Unexhausted**

Petitioner has failed to exhaust his excessive force claims because he did not fairly present these claims to the New York State Court of Appeals.

The Second Circuit has held that "[a]rguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims." Jordan v. Lefeyre, 206 F.3d 196, 198 (2d Cir. 2000) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)). Rather, the fair presentment requirement can be satisfied if, in the leave application, the appellant clearly states that he presses all claims raised in his attached brief, or just generally requests review of all issues in his brief—without specifically arguing any claim in detail. See Jordan, 206 F.3d at 199; Morgan v. Bennett, 204 F.3d 360, 370 (2d Cir. 2000) (finding claims were fairly presented when appellant had asked Court of Appeals to review all claims raised in his attached briefs).

Assuming, arguendo, that petitioner fairly presented his excessive force claims in his Appellate Division brief, he did not fairly present such claims to the Court of Appeals. In his leave application to the Court of Appeals, petitioner challenged the legal sufficiency of the lawful duty element because "[s]pecifically, there is a legal question of First Amendment freedom of speech and religion which was, at least in part, the basis for the troopers' use of force to bring [petitioner] to the ground and shackle his legs and restrain his hands at his sides in a crucifix position." (Leave Appl. at 3.) Although petitioner asked the Court of Appeals to consider his Appellate Division brief on the lawful duty element, he explicitly argued the First Amendment claim with no reference

10

whatsoever to any excessive force claims.  By arguing the First Amendment claim at length and neglecting to argue his excessive force claims, petitioner failed to fairly present such claims to the Court of Appeals.  See Jordan, 206 F.3d at 198–99.  Thus, his excessive force claims are unexhausted.  Furthermore, even if petitioner had exhausted his excessive force claims, they are meritless, as discussed infra.

Petitioner has also clearly failed to exhaust his Equal Protection claim, which is based on the state trooper rules governing detainees.  Petitioner essentially concedes that this claim was not fairly presented to any state court.  He contends that the testimony at trial revealed—for the first time—a rule prohibiting arrestees held at the barracks from sitting on the floor.  He asserts that the officers denied petitioner Equal Protection of the law when they engaged in "arbitrary and capricious enforcement of an irrational rule . . . ."  (Pet. ¶ 14.)  However, petitioner failed to raise anything remotely resembling an Equal Protection claim in his state court appeals by any of the means set forth in Daye.  Although petitioner's Appellate Division brief pointed out that the troopers sat him down on the floor after they had subdued him, this pattern of facts is insufficient to have fairly presented an Equal Protection claim to the Appellate Division.  Moreover, nothing in petitioner's leave application would have alerted the Court of Appeals to an Equal Protection claim.  Because the Equal Protection claim was not fairly presented, it is unexhausted.

**C. Procedural Bar**

"[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) (quoting Coleman v. Thompson, 501 U.S. 722, 735 (1991)) (emphasis omitted); see also Lloyd v. Walker, 771 F. Supp.

570, 574 (E.D.N.Y. 1991) (noting that when unpresented claims are deemed exhausted, "a petitioner's forfeiture of his claims in state court by failing to present them to the proper court bars him from litigating the merits of those claims in federal habeas proceedings" unless he can overcome the procedural bar). A petitioner may overcome the procedural bar by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Because no state remedies remain available to petitioner, petitioner's unexhausted excessive force claims and Equal Protection claim are deemed exhausted but are procedurally barred. See Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009). For the excessive force claims, petitioner has failed to set forth any justification to excuse the procedural bar. As for the Equal Protection claim, petitioner argues that his procedural default should be excused because he did not discover until trial that the police had a rule prohibiting detainees' from sitting on the floor. This argument is meritless. Petitioner could have pursued this claim further at his trial and in his state court appeals—and he unjustifiably failed to do so. Furthermore, petitioner does not indicate that he was prevented from investigating police rules regarding detainees prior to the trial. No fundamental miscarriage of justice would result from the Court's failure to consider these claims. Consequently, petitioner's excessive force and equal protection claims are procedurally barred and unreviewable.

**D. <u>AEDPA Standard of Review</u>**

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by AEDPA. Under 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13 (2000). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." <u>Id.</u> at 413. This standard does not require that reasonable jurists all agree that the state court was wrong. <u>Id.</u> at 409–10. Rather, the standard "falls somewhere between 'merely erroneous' and 'unreasonable to all reasonable jurists.'" <u>Jones</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(1) establishes a deferential standard of review that is "difficult to meet." <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (quoting <u>Metrish v. Lancaster</u>, 133 S. Ct. 1781, 1786 (2013)), <u>reh'g denied</u>, 134 S. Ct. 2835 (2014). Accordingly, "'a federal habeas court may

not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411).

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). A federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

**E. Sufficiency of the Evidence**

When a petitioner challenges the legal sufficiency of his conviction, he "face[s] a high bar in federal habeas proceedings" because there are "two layers of judicial deference." Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012). First, on direct appeal, the court must defer to the jury's conclusions drawn from the evidence at trial. "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam). Second, on habeas review, a federal court cannot overturn a state court's decision to reject a sufficiency of the evidence challenge unless that decision was "objectively unreasonable." Id. (quoting Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)). The conviction must be upheld "if after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). On review, the court must consider the evidence in the light most favorable to the prosecution, and draw all inferences in the prosecution's favor. Id.; Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

To sustain a conviction for Assault in the Second Degree, the jury must have found that petitioner intended to prevent the injured police officer, Trooper Kraus, "from performing a lawful duty." N.Y. Penal Law § 120.05(3). Petitioner argues that because Trooper Kraus was injured as the officers unlawfully restrained him, in violation of his constitutional rights, the evidence was insufficient to support a conviction for Assault in the Second Degree. The Court disagrees with petitioner, for the reasons set forth below.

**1. First Amendment Claim**

Petitioner's argument implicates the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").[6] See Holt v. Hobbs, 135 S. Ct. 853, 859–60 (2015); 42 U.S.C. § 2000cc-1. RLUIPA, which enhances constitutional protections for institutionalized individuals, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

Holt, 135 S. Ct. at 860 (quoting 42 U.S.C. § 2000cc–1(a)). As a threshold issue, the exercise of religion must be based on a sincerely held religious belief. Id. at 862.

---

[6] Petitioner claims the heightened protections of RLUIPA apply to him because he was held at the barracks as an arrestee for processing, and the definition of "institution" in RLUIPA is not limited to prisons and jails. See 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 1997(1) (including in definition of institution "a jail, prison, or other correctional facility" and "a pretrial detention facility"). The Court assumes that petitioner is correct about RLUIPA's application here.

15

The Supreme Court has explained that a burden is substantial if the rule or conduct in question "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of the Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981). Establishment of a substantial burden is not meant to be an "onerous task," but "mere inconvenience to the adherent is insufficient to establish a substantial burden." Pugh v. Goord, 571 F. Supp. 2d 477, 505 (S.D.N.Y. 2008) (quoting Singh v. Goord, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007)). Although courts are not encouraged to sit in judgment of which religious beliefs are important, Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699 (1989), "there will be cases in which it comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis." Ford v. McGinnis, 352 F.3d 582, 593 (2d Cir. 2003). The inquiry is whether the practice in question is considered "central or important" to the adherent's religion. Id. at 593–94.

Upon satisfaction of the substantial burden test, the government must show that it employed the least restrictive means of furthering a compelling governmental interest. Holt, 135 S. Ct. at 860. Prison officials cannot insulate their conduct by invoking terms such as "safety" and "security." Singh, 520 F. Supp. 2d at 499. But RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).

Even under the RLUIPA standard, petitioner's claims are meritless. Petitioner argues that his religious beliefs were substantially burdened because Trooper Kraus physically prevented him from kneeling and because of the state police's rule prohibiting detainees from sitting on the floor. However, despite petitioner's contentions, he was not restrained because he sought to silently pray. As preserved on the recording played during the trial, the altercation that leads to the assault on

16

Trooper Kraus occurred after petitioner—who was sitting on the bench at the time—stood up and began striking the wall. Only after petitioner refused to stop hitting the wall, and responded with profanities, was he physically restrained. Petitioner was not attempting to pray when the assault occurred, nor was Trooper Kraus trying to restrain petitioner from praying. Quite simply, the evidence was sufficient to permit a rational jury to find that this altercation did not encompass a violation of petitioner's First Amendment rights.

Moreover, at no point did petitioner suffer a substantial burden on his sincerely held religious beliefs.[7] Petitioner's inability to kneel on the floor to silently pray—while temporarily held in the squad room for arrest processing—does not rise to the level of a constitutional violation but was, at most, a de minimis burden. See, e.g., DeMoss v. Crain, 636 F.3d 145, 153 (5th Cir. 2011) (no substantial burden when prison's policy prohibited inmates from standing for long periods of time in prison day room and adherent could still choose to stand and pray elsewhere when his religion required that he do so); Singh v. Goord, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (no substantial burden when prison's policy prohibited adherent from praying loudly before dawn and adherent could still pray at any time, so long as it did not interfere with the facility's operations). Because petitioner failed to demonstrate a substantial burden, the Court does not proceed further in the analysis under RLUIPA.

Therefore, on petitioner's First Amendment claim, the Appellate Division's decision regarding the sufficiency challenge was not "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence . . . ." 28 U.S.C. § 2254. Therefore, the petition is denied on this ground.

---

[7] Although petitioner never explicitly states what religion he practices, the Court assumes by his references to "Jesus" (Reply Br. in Supp. of Writ of Habeas Corpus at 6, ECF No. 16) and "the sign of the cross" (Mem. Law in Supp. of Pet. at 5, ECF No. 1-1) that he is of a Christian or Catholic denomination.

### 2. Excessive Force Claims

Petitioner's excessive force claims are also meritless. Applying the Fourth Amendment standard for constitutional seizures, petitioner contends that the officers' decision to restrain him failed to satisfy the "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Petitioner argues that there are "issues of material fact" as to whether the officers reasonably believed it was necessary to further restrain petitioner's arms and legs. (Reply Br. in Supp. of Writ of Habeas Corpus at 19, ECF No. 16.) In this argument, petitioner ignores the applicable, deferential standard of review as well as the evidence. As corroborated by trial testimony and audio-recording, petitioner's outburst preceded the officers' decision to further restrain him in a manner that was reasonable, in light of the potential for injury to petitioner and the officers. This evidence was sufficient to permit a rational jury to find that the officers were lawfully restraining petitioner when he struck Trooper Kraus.

Therefore, the Court does not find that the Appellate Division's decision to reject the sufficiency challenge was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts" in light of the evidence presented to the state courts. 28 U.S.C. § 2254. Because I find petitioner's remaining arguments meritless, the petition is denied and dismissed.

### F. Request for Evidentiary Hearing and Discovery

Petitioner also seeks an evidentiary hearing, pursuant to 28 U.S.C. § 2254(e)(2)(A)(ii), and discovery regarding the New York State Police rule prohibiting detainees from sitting on the floor while in custody. (Pet. ¶¶ 18–19.) Petitioner asserts that "discovery of this rule and an evidentiary hearing is necessary to both scrutinize the constitutionality of this rule on its face, as well as to identify the conduct it is meant to remedy." (Id. ¶ 19.) He argues he was unable to develop

sufficient factual support in the state court proceedings because he was given no notice of the rule's existence before the trial. (Id.)

To justify an evidentiary hearing when a petitioner has failed to develop the factual basis of his claim in state court, the petitioner must show:

> a factual predicate that could not have been previously discovered through the exercise of due diligence; and . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Furthermore, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, a judge may authorize discovery "for good cause." 28 U.S.C. § 2254, Rule 6(a). Good cause requires more than "[g]eneralized statements regarding the possible existence of discoverable material." Pizzuti v. United States, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (citations omitted). "A petitioner can meet his burden of showing 'good cause' for discovery only when 'specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Bracy, 520 U.S. at 908-09); see also, e.g., Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003).

Petitioner requests an evidentiary hearing but has not satisfied the required showing of due diligence into the facts. Despite full knowledge that multiple troopers had asked petitioner to sit on the bench, he did not investigate the reasoning behind their requests prior to trial. The Court also finds no justification for discovery into the rules governing petitioner's detainment. Not only did petitioner unjustifiably fail to develop the facts underlying this claim in state court, but the police rules are irrelevant to the officers' decision to further restrain petitioner after his outburst. See Perez v. United States, 274 F. Supp. 2d 330, 336 (E.D.N.Y. 2003) (declining discovery request

as a mere fishing expedition when petitioner failed to produce any proof of alleged police corruption or that police conduct had been anything other than legitimate). Consequently, the requests for an evidentiary hearing and discovery are denied.

### III. CONCLUSION

For the foregoing reasons, the habeas petition is denied in its entirety. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

**SO ORDERED.**

Dated: May 6, 2016
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE